IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BOBBY JAMES CAMACHO-ORTIZ                                                      PLAINTIFF

      v.                              Civil No. 15-5218

SERGEANT MICHELLE WALLACE;
CORPORAL CALEB KELLY; OFFICER
NATE TUCKER; OFFICER ZACHARY HALE;
OFFICER CHRIS FOSTER; OFFICER
JAMES SMITH; OFFICER STEVEN
SCOTT; OFFICER JAMES SHARP; and
SERGEANT RANDALL McELROY                                                       DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the Cummins Unit of the Arkansas Department of Correction. At all times relevant to this complaint, Plaintiff was incarcerated in the Benton County Detention Center (BCDC). Plaintiff maintains his constitutional rights were violated when excessive force was used against him on May 3, 2015.

The case is presently before the Court on the motion for summary judgment filed by Defendants (Doc. 22). On May 10, 2016, a hearing was held to allow the Plaintiff to testify in response to the summary judgment motion. Plaintiff appeared by video conference. The motion (Doc. 22) is now ready for decision.

### 1. Background

During the hearing, the parties agreed that the following claims and/or parties should be dismissed: (1) Sergeant Michelle Wallace, without prejudice, because she no longer worked for Benton County and the Court did not have an address at which she could be served; (2) the claims that Plaintiff was being held in administrative segregation in retaliation, without prejudice; (3) the claims against Officer Steven Scott with prejudice; and (4) all official capacity claims, with prejudice.

Plaintiff was booked into the BCDC on April 30, 2014. He was in convicted status at the time of the events at issue in this case.

Plaintiff testified that on May 3, 2015, he was in his cell having a bad day. Plaintiff's cell was in the top tier of the pod. Plaintiff testified that at about 7:00 or 7:30 p.m., that he and a couple of other inmates decided to flood the pod so that the guards would have to come in and clean it up. They put towels under their doors until about two or three inches of water had accumulated in their individual cells. They then pulled the towels away from the doors causing the water to rush out and flow down to the first floor of the pod.

Officers entered the pod and went to the top tier in an effort to determine who was causing the flood. Kristen Baylor's cell door, E-223, was opened first and was next to Plaintiff's. Officers asked Baylor why he was flooding the pod. Officers next opened the Plaintiff's cell door, E-224. Plaintiff testified he was told to go to the wall and put his hands on it. Plaintiff testified that he complied.

Plaintiff testified that at this point, all the officers were yelling and asking what the issue was and why he was flooding the pod. Plaintiff laughed in response. Sergeant Wallace directed the Plaintiff to go to the floor. Plaintiff refused because it was wet.

Plaintiff testified that Corporal Kelly attempted to use a knee strike to get Plaintiff to go to the floor. Plaintiff turned around and swung at Corporal Kelly, pushing him towards the toilet, and causing him to fall. Plaintiff testified that at this point everyone started fighting. Plaintiff testified that he fell to the floor and initially tried to get back up. Officer Smith was swinging at him; Sergeant Wallace was gouging his eyes; Officer Foster was attempting to get his arms behind his back; and the other guards attempted to restrain him by pinning him down to the floor on his stomach. Plaintiff conceded that given his conduct, the officers might have been justified in using force to take him to the floor.

Plaintiff testified that as Officer Smith was handcuffing him, Officer Hale had him in a choke hold and Sergeant Wallace pulled her taser and tased him on the right backside. Plaintiff told Officer Hale that he could not breathe. In fact, Plaintiff believes he lost consciousness for a minute or so. Plaintiff testified that when he came to, the officers were picking him up.

Officers Hale and Tucker escorted Plaintiff to booking. As they did so, they were pulling up on the Plaintiff's wrists, which in turn caused his arms to raise. Plaintiff testified he told the officers that he was in pain, was not resisting, and asked them to ease up on his wrists and arms.

As a result of the use of the taser, Plaintiff stated he had marks on his right side for two or three days. Plaintiff also testified that his eyes were red from being gouged. Plaintiff indicated he had marks on his wrists from the handcuffs for three or four days.

Plaintiff was placed in detox cell two. He was on the ground and was told to put his hands under him and stay on the ground until the officers left. Twenty to thirty minutes later, Officer Sharp and Sergeant McElroy entered the cell and asked what had happened and why he was swinging at the guards. When Plaintiff was telling Sergeant McElroy that he was having a bad day, Sergeant McElroy struck Plaintiff with a closed fist on the back of his head on the right side. At the time, Plaintiff was not handcuffed but was standing with his hands on the wall as ordered. Sergeant McElroy asked a bunch of questions. Plaintiff's back was to Sergeant McElroy.

Plaintiff testified he covered his face and ears with his hands in a protective maneuver but was told to remove his hands. Plaintiff testified that at this time both Officer Sharp and Sergeant McElroy were striking Plaintiff in the head. There were other guards present but they were not involved in the use of force.

Plaintiff testified his ear drum on the right side "popped" and he could not hear from it for a week or so. He also had knots on his head from being struck.

After this, Plaintiff was put in five point restraints--cuffs on the hands and feet and a pair of cuffs or a chain attaching the hands and feet together. He was left in restraints for thirty to forty-five minutes. However, he was checked on. Officer Sharp and Sergeant McElroy came back with a smock and told the Plaintiff to change into it. Sergeant McElroy asked the Plaintiff if he needed medical assistance. Plaintiff testified that he refused medical treatment because he was angry. Plaintiff testified that Sergeant McElroy said he could run his shift like he wanted and if the Plaintiff gave him any more problems, he would kick Plaintiff's teeth in. Plaintiff

AO72A
(Rev. 8/82)

testified that Sergeant McElroy also offered to settle the issue in the recreation yard and stated he would remove his belt to make it fair.

Plaintiff was taken to a cell in administrative segregation. Early the following morning, Plaintiff was served a disciplinary for assaulting jail staff and flooding. (Doc. 24-3 at pg. 11). Plaintiff submitted a request on May 4, 2015, via the electronic kiosk system, to speak with an investigator. The written response was, "What is this about? We have different divisions of investigators." (Doc. 24-5). Plaintiff testified that Investigator Robbins came to talk to him and asked what he needed to talk to an investigator about. When Plaintiff responded that it was about the use of force on May 3rd, the investigator said he needed to talk to a different kind of investigator. There was no follow up. After that, Plaintiff did not file a grievance because he did not believe they would do anything about it. He just filed this case. Plaintiff explained that deputies were the ones who told him to pursue the matter by speaking with an investigator and that is why he submitted the May 4th request and not a grievance.

Defendants submitted as Exhibit A-6 video footage of the incidents inside the pod and in the booking area. However, the parties agree that the video only shows the outside of the cells and there is no view of the actual in-cell encounters.[1]

## 2. Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2)

---

[1] In their summary judgment brief, Defendants assert that the video shows that Defendants used only reasonable force. (Doc. 23 at pgs. 7-8). However, at the hearing, defense counsel acknowledged that the video does not contain any footage of the use of force.

the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### 3. Discussion

Defendants move for summary judgment on the following grounds: (1) Plaintiff failed to exhaust his administrative remedies; (2) the force used against the Plaintiff was reasonable; and (3) Defendants are entitled to qualified immunity.

### A. Exhaustion of Administrative Remedies

The PLRA in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Exhaustion is mandatory. Porter v. Nussle, 534 U.S. 516, 524-25 (2002). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." Id. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to clam, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. Failure to exhaust available administrative remedies is an affirmative defense and Defendants have the burden of proving nonexhaustion. See Porter v. Sturm, 781 F.3d 448, 451 (8th Cir. 2015).

Here, Defendants argue Plaintiff failed to exhaust his administrative remedies when he failed to submit a grievance concerning the events of May 3rd against any of the Defendants. The BCDC has a grievance procedure that requires a grievance to be in the form of a written statement which "shall state fully the time, date, names of the jail deputy and/or staff member involved, and pertinent details of the incident, including the names of any witnesses." *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A-5 at p. 76.[2] The sole written communication from the Plaintiff was made on May 4, 2015, and said: "need to talk to an investigator pls. and thank you. as soon as possible." *Id.* A-4 at p. 120. J. Robbins responded that day asking: "What is this about? We have different divisions of investigators." *Id.* Plaintiff submitted nothing further in writing about the incident.

---

[2] Page numbers are to the jail file page number which is located in the lower middle or right hand corner of the page.

Plaintiff maintains he submitted nothing more because nothing was done about his request to see an investigator after he informed Investigator Robbins that the issue involved was the May 3rd use of force. When he was not seen by another investigator, Plaintiff felt that further submissions would be futile.

Plaintiff explained that he submitted the request to speak with an investigator and not a grievance because that is what deputies advised him to do to pursue the matter. When Investigator Robbins went to talk to the Plaintiff and Plaintiff attempted to grieve the matter with Investigator Robbins, Investigator Robbins advised the Plaintiff that he needed to speak to a different kind of investigator. Investigator Robbins did not advise the Plaintiff to follow up with a grievance, he did not refer the matter to the appropriate investigator, nor did he advise the Plaintiff who the appropriate investigator would be so that Plaintiff could contact that investigator. Viewing the evidence in a light most favorable to the Plaintiff, I believe there is a genuine issue of material fact as to whether Plaintiff has an available remedy to exhaust after his initial submission, followed by his conversation with Investigator Robbins, and whether he was misled so as to prevent his use of the grievance procedure. See Ross v. Blake, No. 15-339, ___ U.S. ___, 2016 WL 3128839, *10-11 (June 6, 2016).

### B. Excessive Force

"When confronted with a claim of excessive force alleging a violation of the Eighth Amendment, the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Santiago v. Blair, 707 F.3d 984, 990 (8th Cir. 2013) (quoting Hudson v. McMilliam, 503 U.S. 1, 6-7 (1992)). "[E]very malicious push or shove does not amount to a deprivation of constitutional rights."

Hickey v. Reeder, 12 F.3d 754, 757 (8th Cir. 1993). "Whether a situation justifies the use of force to maintain or restore discipline is a fact specific issue that turns on the circumstances of the individual case or the particular prison setting." Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006)(internal quotations omitted).

The Court must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, the threat to the safety of the staff and inmates, and any attempt to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986).

In Wilkins v. Gaddy, 590 U.S. 34 (2010), the Supreme Court held that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of force applied is not in and of itself a threshold requirement for proving this type of Eighth Amendment claim." Williams v. Jackson, 600 F.3d 1007, 1012 (8th Cir. 2010).

Plaintiff's claims against Corporal Kelly fail. The only force used by Corporal Kelly was the attempt to use a knee strike to take Plaintiff to the floor. As discussed above, Plaintiff concedes the force used to take him to the floor was justified.

Plaintiff's claims against Officer Smith also fail. According to Plaintiff, Smith swung on him when he was fighting with Corporal Kelly and put him into handcuffs. Given the situation, the force used was justified. The use of force was minimal and there is nothing to suggest Officer Smith used the force maliciously or sadistically to cause harm to the Plaintiff.

The only use of force attributed to Officer Foster was his attempt to get Plaintiff's arms behind his back during the scuffle that occurred on the floor in E-224. Again, the use of force

is minimal and there is nothing in the record to suggest Officer Foster's actions were taken maliciously or sadistically to cause Plaintiff harm.

With respect to Officer Zachary Hale, there are genuine issues of material fact as to whether he employed excessive force. Plaintiff testified that Officer Hale choked him into unconsciousness while the Plaintiff was on the floor, being handcuffed, and was restrained by several officers. This use of force may well have crossed the line between force necessary to maintain discipline and order and that used maliciously or sadistically to cause harm. This is a fact question.

Officers Hale and Tucker escorted Plaintiff to booking. Plaintiff testified that as they did so, they were pulling up on the Plaintiff's wrists which in turn caused his arms to raise. Plaintiff testified that he told the officers that he was in pain, was not resisting, and asked them to ease up on his wrists and arms. Plaintiff testified he had marks from the handcuffs for two or three days. However, Plaintiff was also handcuffed a second time when he was put into five point restraints in the detox cell. Any minor injury to his wrists caused by handcuffs could well have occurred while Plaintiff was in the detox cell rather than during the escort. No genuine issue of fact exists as to whether the force used in escorting the Plaintiff to booking was done maliciously and sadistically to cause the Plaintiff harm. See e.g., Bell v. Wolfish, 441 U.S. 520, 547 (1979)(prison officials are given wide-ranging discretion to utilize judgment in application of force to maintain institutional security); Moody v. Proctor, 986 F.2d 239, 241 (8th Cir. 1993)(use of handcuffs and black box[3] is penologically justified even though it caused discomfort and injury because there was no evidence defendants acted maliciously or sadistically); Jones Bey

---

[3] A black box is a cover placed over handcuffs to prevent an inmate from picking a lock.

-10-

v. Johnson, 248 Fed. Appx. 675, 677 (6th Cir. 2007)(holding that pain and swelling caused to the plaintiff's wrist by the guards pulling his handcuffs and striking his hands on the food slot were insufficient injuries to demonstrate a violation of the Eighth Amendment); Travillion v. Leon, 248 Fed. Apps. 353, 356 (3d Cir. 2007)(no Eighth Amendment violation stated when jailer pulled inmate out of his seat, twisted his arms, and put him in handcuffs before escorting him to disciplinary housing unit); Rister v. Lamas, No. 4:10-cv-1574, 2013 WL 786420 (M.D. Penn. March 1, 2013)(no Eighth Amendment violation when the guard forced handcuffs on inmate and pulled his arms through small slot in the door); Tatum v. Shoemaker, No. 7:10-cv-00296, 2012 WL 899633 (W.D. Vir. March 16, 2012)(no Eighth Amendment violation for tightening handcuffs and twisting plaintiff's arms to escort him to a different area of the jail).

With respect to Sergeant McElroy and Officer Sharp, I believe there are genuine issues of fact that preclude the grant of summary judgment in their favor. Plaintiff testified he complied with an order to go to the wall and was standing there with his back to Sergeant McElroy when he struck Plaintiff with a closed fist on the back of his head on the right side. According to Plaintiff, both Sergeant McElroy and Officer Sharp continued to strike him on the head causing him to lose his hearing for a week and have knots on his head. Viewing the evidence in the Plaintiff's favor, as we must, it appears this use of force was unprovoked and not used to maintain order or discipline.

### C. Qualified Immunity

Officer Hale, Officer Sharp, and Sergeant McElroy contend they are entitled to qualified immunity. "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v.

-11-

Bryant, 502 U.S. 224 (1991) (quoting, Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)). The inquiry is normally one of pure law. J.H.H. v. O'Hara, 878 F.2d 240 (8th Cir. 1989).

"The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process." Washington v. Normandy Fire Protection Dist., 272 F.3d 522, 526 (8th Cir. 2001). First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendants'] conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194 (2001). Second, the court must determine whether that right is so clearly established that a reasonable official would have known that his actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009). "Qualified immunity is appropriate only if no reasonable fact-finder could answer yes to both of these questions." Nelson v. Con. Med. Services, 583 F.3d 522, 528 (8th Cir. 2009).

For the reasons discussed above, taken in the light most favorable to the Plaintiff, I believe the facts alleged will support a finding that Defendants Hale, Sharp, and McElroy violated the Plaintiff's Eighth Amendment rights. Furthermore, I believe the Eighth Amendment right to be free from the wanton use of force inflicted maliciously or sadistically was clearly established at the time of the offending conduct. See Whitley v. Albers, 475 U.S. 312, 320 (1986)(whether the measures taken that inflict unnecessary and wanton pain constitute excessive force turns on the question of whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm). I believe a reasonable trier of fact could find that the force was applied maliciously or sadistically. As a reasonable trier of fact could answer yes to both questions of the qualified immunity inquiry, Defendants Hale, Sharp, and McElroy are not entitled to qualified immunity.

AO72A
(Rev. 8/82)

### 4. Conclusion

For the reasons stated, I recommend that Defendants' summary judgment motion (Doc. 22) be **GRANTED IN PART AND DENIED IN PART.** Specifically, I recommend, with the agreement of the parties, that: (1) the claims against Sergeant Michelle Wallace be dismissed without prejudice on the grounds that she could not be located to serve; (2) Plaintiff's claim that he was retaliated against and/or punished by being placed in administrative segregation be dismissed without prejudice; (3) all claims against Officer Steven Scott be dismissed with prejudice; (4) all official capacity claims be dismissed with prejudice; and (5) all claims against Corporal Kelly, Officer Smith, Officer Foster, and Officer Tucker be dismissed with prejudice. This leaves for later resolution the claims against Officer Hale (related to his conduct in cell E-224), Officer Sharp, and Sergeant McElroy.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of June 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)